1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

FELIPE GARCIA,
CDCR# H-74821,

                                    Plaintiff,

            vs.

N. CASTRO, et al.,

                                    Defendants.

Case No.:  21-cv-1991-MMA (MSB)

**AMENDED ORDER GRANTING
MOTION TO FILE EXCESS PAGES
AND DISMISSING ACTION
PURSUANT TO 28 U.S.C.
§ 1915(e)(2)(B) AND 28 U.S.C.
§ 1915A(b)**

[Doc. No. 9]

This Order amends and supersedes the Court's June 30, 2022 Order.  *See* Doc. No. 11.

On November 29, 2021, Felipe Garcia ("Plaintiff"), currently incarcerated at the Richard J. Donovan Correctional Facility ("RJD"), and proceeding *pro se*, filed this civil action pursuant to 42 U.S.C. § 1983.  *See* Doc. No. 1 ("Compl.").  Plaintiff also filed a Motion to Proceed in Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a).  *See* Doc. No. 2.  On February 3, 2022, the Court granted Plaintiff's IFP motion and dismissed the action with leave to amend pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).  *See* Doc. No. 5.  Plaintiff was given 45 days from the date of the Order within which to file an amended complaint.  *Id.*

-1-                                         21-cv-1991-MMA (MSB)

1  On February 16, 2022, Plaintiff filed a First Amended Complaint pursuant to this

2 Court's Order.  *See* Doc. No. 6 ("FAC").  On April 19, 2022, the Court dismissed

3 Defendants Kathleen Allison and M. Pollard from this action and directed the Clerk of

4 Court to terminate them from the docket.  Doc. No. 8.  The Court also dismissed the

5 claims against Defendants Castro, Lewis, De la Vega, and Gomez-Godinez and gave

6 Plaintiff 45 days from the date of the Order within which to file an amended complaint as

7 to those Defendants only.  *See id*.  On May 12, 2022, Plaintiff filed a Motion for Leave to

8 File Excess Pages, *see* Doc. No. 9, and a Second Amended Complaint, *see* Doc. No. 10

9 ("SAC").

### I. MOTION FOR LEAVE TO FILE EXCESS PAGES

11  Plaintiff has filed a Motion for Leave to File Excess Pages in which he asks the

12 Court to permit him to file the SAC, which exceeds the page limit imposed by S.D. Cal.

13 CivLR 8.2(a).  Good cause appearing, the Court **GRANTS** Plaintiff's motion.

### II. SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)(B) & 1915A

**A. Standard of Review**

16  As with this original Complaint, because Plaintiff is a prisoner and is proceeding

17 IFP, his Complaint requires a preliminary screening pursuant to 28 U.S.C. § 1915(e)(2)

18 and § 1915A(b).  Under these statutes, the Court must review and *sua sponte* dismiss an

19 IFP complaint, and any complaint filed by a prisoner seeking redress from a

20 governmental entity, or officer or employee of a governmental entity, which is frivolous,

21 malicious, fails to state a claim, or seeks damages from defendants who are immune.  *See*

22 *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C.

23 § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28

24 U.S.C. § 1915A(b)).  "The purpose of [screening] is 'to ensure that the targets of

25 frivolous or malicious suits need not bear the expense of responding.'"  *Nordstrom v.*

26 *Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health*

27 *Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

28  "The standard for determining whether a plaintiff has failed to state a claim upon

1   which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of

2   Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668

3   F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th

4   Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard

5   applied in the context of failure to state a claim under Federal Rule of Civil Procedure

6   12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter,

7   accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

8   556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

9   Detailed factual allegations are not required, but "[t]hreadbare recitals of the

10   elements of a cause of action, supported by mere conclusory statements, do not suffice."

11   *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for

12   relief [is] . . . a context-specific task that requires the reviewing court to draw on its

13   judicial experience and common sense." *Id.* The "mere possibility of misconduct" or

14   "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting

15   this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969

16   (9th Cir. 2009).

17   **B.    Plaintiff's Allegations**

18   Plaintiff's factual allegation in his SAC are essentially identical to those he made

19   in his original Complaint and in his FAC. Plaintiff continues to allege that CDCR

20   officials are improperly calculating his worktime credits by refusing to apply a 50%

21   accrual rate to his sentences. The CDCR originally calculated Plaintiff's worktime

22   credits at 15%; Plaintiff then successfully challenged the method by which he was

23   criminally sentenced in Kern County Superior Court and the rate at which he was

24   accumulating worktime credits. *See* Compl. at 6; FAC at 12; Doc. No. 6-2 at 3–4 ; SAC

25   at 5. Plaintiff alleges he was resentenced on January 31, 2020. Compl. at 6; FAC at 12;

26   SAC at 6–7. Court minutes show the superior court judge stated, "Defendant is entitled

27   to 50% custody credits on the Kern County case and the San Diego County case." Doc.

28   No. 10-2 at 5.

1    On February 24, 2020, April 1, 2020, April 16, 2020, May 11, 2020, May 12,

2  2020, and July 6. 2020, Plaintiff claims he informed prison officials of the resentencing

3  and asked for a hearing on the calculation of his credits, but was refused.  Compl. at 6–7;

4  FAC at 12–13; SAC at 8.  He told Defendant Lewis about the refusal and was given a

5  document explaining the custody credit calculation which he claims was wrong and based

6  on incorrect information. Compl. at 7; FAC at 13; SAC at 8.  He also sent a letter to the

7  litigation processing unit in Sacramento regarding the issue.  SAC at 8.  Plaintiff claims

8  he told Defendant De la Vega about the resentencing and asked him to investigate the

9  recalculation problem.  *Id.* at 9.  During this period, his release date was changed seven

10  times.  *Id.* at 9.

11    On June 8, 2020, Plaintiff says he was interviewed by Defendant Nancy Castro.

12  *See* Compl. at 9; FAC at 13; SAC at 11.  According to Plaintiff, Castro told him

13  "Obviously you know a lot about the law, that you want to tell me how to do my job,"

14  and "Well, since you think you know the law, and have filed many 602s and lawsuits

15  against correctional officers . . . we'll just make sure you don't go home anytime soon,

16  and sue me."  SAC at 12; *see also* Compl. at 10; FAC at 16.  On May 20, 2021, Plaintiff

17  claims he told Defendant De la Vega about the January 31, 2020 resentencing and

18  explained he was eligible for the 50% credit.  SAC at 12–13.  De la Vega responded, "I

19  have a lot of work; I don't know and don't care; you know more than I do, you want to

20  602 me, because I am not going to help you."  SAC at 13.

21    On January 13, 2022, the Kern County Superior Court granted Plaintiff's Motion

22  to Correct Abstract of Judgment, noting that Plaintiff's January 31, 2020 sentence was

23  not authorized by law and Plaintiff was not entitled to 50% credits.  *Id.* at 17–18.  He

24  thereafter filed a petition for writ of habeas corpus in the Fifth Appellate District.  SAC at

25  20–22.  The Attorney General filed an informal response explaining various errors CDCR

26  staff had made in the calculation of Plaintiff's sentence and changes in the law which

27

28

1  affected the calculations.  *Id.*   court denied Plaintiff's petition on May 20, 2022.[1]

2  　　Plaintiff seeks a declaratory judgment stating that the defendants violated his

3  federal constitutional rights, and Order directing Defendants Allison, Pollard, and Castro

4  to conduct a computation hearing and award correct work time credits, as well as

5  compensatory, and punitive damages against each named Defendant.  FAC at 17–18.

6  **C.    42 U.S.C. § 1983**

7  　　"Section 1983 creates a private right of action against individuals who, acting

8  under color of state law, violate federal constitutional or statutory rights."  *Devereaux v.*

9  *Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).  Section 1983 "is not itself a source of

10  substantive rights, but merely provides a method for vindicating federal rights elsewhere

11  conferred."  *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks

12  and citations omitted).  "To establish § 1983 liability, a plaintiff must show both

13  (1) deprivation of a right secured by the Constitution and laws of the United States, and

14  (2) that the deprivation was committed by a person acting under color of state law."  *Tsao*

15  *v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

16  **D.    Discussion**

17  　　In Count One, Plaintiff contends that the Defendants retaliated against him in

18  violation of the First Amendment.  SAC at 21.  In Count Two, he claims the Defendants

19  violated his Eighth Amendment rights to be free of cruel and unusual punishment and

20  that he is currently a victim of "excessive confinement."  *Id.* at 22.  And, in Count Three,

21  Plaintiff argues his Fourteenth Amendment due process rights have been violated.  *Id.* at

22  23.

23

24

25

26

27  [1] *See In re Felipe Garcia*, No. F083517 (Cal. Ct. App. May 20, 2022), available at
https://appellatecases.courtinfo.ca.gov/search/case/mainCaseScreen.cfm?dist=5&doc_id=2367063&doc

28  _no=F083517&request_token=NiIwLSEmPkw5W1ApSCNdUE5IQFQ7UExbKyIuUztSQCAgCg%3D
%3D) (last visited 6/29/22).

1    *1.     Retaliation (Count One)*

2    As in his first two Complaints, Plaintiff again claims Defendants Castro and De la

3    Vega retaliated against him for filing lawsuits against the CDCR by refusing to correct

4    his EPRD to conform with Plaintiff's belief that he is entitled to a 50% work time credit.

5    SAC at 12–13.  "Within the prison context, a viable claim of First Amendment retaliation

6    entails five basic elements: (1) An assertion that a state actor took some adverse action

7    against an inmate (2) because of (3) that prisoner's protected conduct, and that such

8    action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action

9    did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408

10   F.3d 559, 567-68 (9th Cir. 2005).

11   Plaintiff is serving prison sentences for both violent and non-violent offenses.

12   According to Plaintiff, he successfully challenged the application of the 15% credit

13   accrual rate for violent offenses to all of his sentences in 2019 and his case was remanded

14   to the Kern County Superior Court for resentencing.  *See* Doc. No. 10-1 at 4–6; Doc.

15   No. 10-4 at 20–22.  On January 31, 2020, Plaintiff was resentenced.  *See* Doc. No. 10-1 at

16   4–6.  The sentencing judge's notes in the abstract of judgment state that Plaintiff "is

17   entitled to 50% custody credits on the Kern County case and the San Diego County case."

18   *Id*.  Based on this, Plaintiff claims he is entitled to be earning credits at a 50% rate.  *See*

19   *generally* SAC.  Plaintiff's own Exhibit 13, however, shows that the judge's statement

20   was incorrect and contrary to California law.  *See* Doc No. 10-4 at 20–22.  Plaintiff's

21   Exhibit 13 also shows that after Plaintiff filed another habeas corpus petition in state

22   court in June of 2020 alleging his credits were still being improperly calculated at the

23   15% rate, Plaintiff's credits were recalculated at the 33.3% rate.  *Id*.  On May 1, 2021, a

24   California law awarding non-violent second strike prisoners like Plaintiff a 50% credit

25   earning rate went into effect.  *Id*.  In October of 2021, Plaintiff's credits were again

26   calculated improperly based on the violent offender credit earning rate and Plaintiff filed

27   another state habeas corpus petition challenging the credit rate applied to his sentences.

28   *Id*.  Plaintiff's Exhibit 13 shows that as of March 30, 2022, however, his credits have

1   been correctly recalculated "using two different credit earning rates – 33.3% for the time

2   he served on the sentence before May 1, 2021, and 50% for the remainder of the

3   sentence." *Id.*  His current earliest possible release date ("EPRD") is October 30, 2022.

4   *Id.*

5          Plaintiff's allegations are insufficient to plausibly allege that either Castro or De la

6   Vega took adverse action against Plaintiff because of his protected conduct.  *See Rhodes*,

7   408 F.3d at 567–68.  Rather, his own exhibit shows the incorrect calculations appear to

8   have been a result of a combination of human error, the complexity of California's credit

9   earning rates, and a change in California law.  *See* Doc. No. 10-4 at 20–22; *see also*

10  *Watison*, 668 F.3d at 1114–15 (stating that a plaintiff must allege that "in addition to a

11  retaliatory motive, . . . the defendant's actions were arbitrary and capricious, or that they

12  were 'unnecessary to the maintenance of order in the institution'") (quoting *Franklin v.*

13  *Murphy*, 745 F.2d 1221, 1230 (9th Cir. 1984)).  In addition, Exhibit 13 shows his credits

14  have now been properly calculated.  Doc. No. 10-4 at 21–22.  He has therefore failed to

15  state a claim upon which § 1983 relief can be granted.  *See Watison*, 668 F.3d at 1112;

16  *Iqbal*, 556 U.S. at 678; *see also* 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

17          2.      *Excessive Confinement/Eighth Amendment (Count Two)*

18          Plaintiff again argues his Eighth Amendment rights were violated by the

19  Defendants' refusal to change his EPRD date, thereby subjecting him to excessive

20  punishment.  SAC at 13 –17.  As the Court explained to Plaintiff in its April 19, 2022

21  Order, to the extent he seeks an earlier release from custody, his suit may not proceed as

22  a civil rights action.  In general, claims of constitutional violations related to the

23  "circumstances" of a prisoner's confinement must be brought in a civil rights action

24  under § 1983, while constitutional challenges to the validity or duration of a prisoner's

25  confinement which seek either "immediate release from prison" or the "shortening of [a

26  state prison] term" must be raised in a petition for federal habeas corpus under 28 U.S.C.

27  § 2254, or through appropriate state relief.  *Muhammad v. Close*, 540 U.S. 749, 750

28  (2004) ("Federal law opens two main avenues to relief on complaints related to

1    imprisonment . . . .") (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)); *Wilkinson*

2    *v. Dotson*, 544 U.S. 74, 78–79 (2005) (citations and internal quotation marks omitted);

3    *Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) (en banc) ("The Court has long

4    held that habeas is the exclusive vehicle for claims brought by state prisoners that fall

5    within the core of habeas, and such claims may not be brought in a § 1983 action.")

6    (citing *Dotson*, 544 U.S. at 81–82).  Therefore, Plaintiff's claims of excessive

7    confinement must be brought via habeas corpus.

8         In addition, as the Court also explained in its April 19, 2022 Order, in order to state

9    a plausible Eighth Amendment claim for relief, a Plaintiff must allege facts sufficient to

10   show that Defendants acted with "deliberate indifference."  *Castro v. Cnty. of Los*

11   *Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016); *Iqbal*, 556 U.S. at 678.  "A prison official

12   acts with 'deliberate indifference . . . only if the [prison official] knows of and disregards

13   an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057

14   (9th Cir. 2004) (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir.

15   2002)), *overruled on other grounds by Castro*, 833 F.3d at 1076.  "Under this standard,

16   the prison official must not only 'be aware of facts from which the inference could be

17   drawn that a substantial risk of serious harm exists,' but that person 'must also draw the

18   inference.'" *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

19        Plaintiff has not stated an Eighth Amendment claim against any Defendant because

20   he has not plausibly alleged they were "aware of facts from which the inference could be

21   drawn that a substantial risk of serious harm exists" and actually drew such an inference.

22   *Toguchi*, 391 F.3d at 1057; *Iqbal*, 556 U.S. at 678.  Indeed, Plaintiff has not alleged any

23   risk to his health or safety, only that he disagrees with Defendants' calculation of his

24   work time credits.  *See generally* SAC.  He has therefore failed to state a claim upon

25   which § 1983 relief can be granted.  *See Watison*, 668 F.3d at 1112; *Iqbal*, 556 U.S. at

26   678; *see also* 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

27

28

1

       *3.      Due Process (Count Three)*

2        "The Fourteenth Amendment's Due Process Clause protects persons against

3   deprivations of life, liberty, or property; and those who seek to invoke its procedural

4   protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545

5   U.S. 209, 221 (2005).  Liberty interests protected by the Due Process Clause "will be

6   generally limited to freedom from restraint which, while not exceeding the sentence in

7   such an unexpected manner as to give rise to protection by the Due Process Clause of its

8   own force, nonetheless imposes atypical and significant hardship on the inmate in

9   relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484

10  (1995).  To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or

11  property interest protected by the Constitution; (2) a deprivation of the interest by the

12  government; (and) (3) lack of process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir.

13  2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

14       "California has not created a protected liberty interest in earning credits for work."

15  *Vu v. Rackley*, No. 2:16-cv-0217 TLN GGH P, 2016 WL 3181228, at \*3 (E.D. Cal. June

16  8, 2016) (citing Cal. Penal Code § 2933(c) ("Credit is a privilege, not a right") and *Kalka*

17  *v. Vasquez*, 867 F.2d 546, 547 (9th Cir. 1989) ("section 2933 does not create a

18  constitutionally protected liberty interest"); *Touissant v. McCarthy*, 801 F.2d 1080, 1095

19  (9th Cir. 1986) (under § 2933 "prisoners have no right to earn the one-for-one worktime

20  credits").  Further, Prisoners have "no constitutional right to a particular classification or

21  to earn credits." *Hernandez v. Adams*, No. 1:08-cv-00254 LJO MJS HC, 2010 WL

22  5071131, at \*4 (E.D. Cal. Dec. 7, 2010).  Because Plaintiff has not plausibly alleged he

23  was deprived of "a liberty or property interest protected by the Constitution," *Wright*, 219

24  F.3d at 913, he has not stated a claim for which § 1983 relief can be granted.  *Iqbal*, 556

25  U.S. at 676; *see also* 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

26  **E.    Leave to Amend**

27       On February 3, 2021, the Court explained to Plaintiff what pleading deficiencies

28  were present in his original Complaint and gave him time to file an Amended Complaint

1    to cure those deficiencies.  *See* Doc. No. 5.  On April 19, 2022, the Court again explained

2    what pleading deficiencies were present in his First Amended Complaint and gave him

3    time to file a Second Amended Complaint to cure those deficiencies.  *See* Doc. No. 8.

4    Despite having had this opportunity, Plaintiff has still failed to adequately plead any

5    constitutional claim for relief against the Defendants.  Therefore, the Court finds further

6    amendment would be futile.  *See Gonzalez v. Planned Parenthood*, 759, F.3d 1112, 1116

7    (9th Cir. 2014) ("'Futility of amendment can, by itself, justify the denial of . . . leave to

8    amend.'") (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)); *Zucco*

9    *Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the

10   plaintiff has previously been granted leave to amend and has subsequently failed to add

11   the requisite particularity to its claims, [t]he district court's discretion to deny leave to

12   amend is particularly broad." (internal quotation marks omitted) (second alteration in

13   original)).

### III. STATE LAW CLAIMS

15         Finally, to the extent Plaintiff seeks to bring claims under state law for false

16   imprisonment, negligence, and negligent infliction of emotional distress, *see* SAC at 17,

17   the Court may "decline to exercise supplemental jurisdiction" over any supplemental

18   state law claim if it "has dismissed all claims over which it has original jurisdiction."  28

19   U.S.C. § 1367(c); *Sanford v. Member Works, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010)

20   ("[I]n the usual case in which all federal-law claims are eliminated before trial, the

21   balance of factors to be considered under the pendent jurisdiction doctrine . . . will point

22   toward declining to exercise jurisdiction over the remaining state-law claims.")  Because

23   the Court has dismissed all of Plaintiff's federal claims, the Court declines to exercise

24   supplemental jurisdiction over any state law claims.

### IV. CONCLUSION

26         Based on the foregoing, the Court **GRANTS** Plaintiff's Motion for Leave to File

27   Excess Pages and **DISMISSES** this action in its entirety without further leave to amend

28   pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).  The Court

1    **CERTIFIES** that an IFP appeal would not be taken in good faith pursuant to 28 U.S.C.

2    § 1915(a)(3) and **DIRECTS** the Clerk of Court to enter a final judgment of dismissal and

3    close the file.

4            **IT IS SO ORDERED**.

5    Dated:  July 1, 2022

6    
7                                          HON. MICHAEL M. ANELLO
                                           United States District Judge
8